UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONERA HOLDING B.V.,

        Petitioner,

v.

ÇUKUROVA HOLDING A.Ş.,

        Respondent.

Case No. 11 CIV 8909 (DLC)
ECF Case

## ÇUKUROVA HOLDING A.Ş.'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR AN ORDER COMPELLING RESPONSES TO DISCOVERY REQUESTS AND HOLDING RESPONDENT IN CONTEMPT

Peter R. Chaffetz
David M. Lindsey
Andreas A. Frischknecht
Jennifer L. Gorskie

**CHAFFETZ LINDSEY LLP**
505 Fifth Avenue, 4th Floor
New York, NY 10017
Tel. (212) 257-6960
Fax (212) 257-6950
www.chaffetzlindsey.com

*Attorneys for Çukurova Holding A.Ş.*

– i –

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 1

    I.     Sonera Misstates the Facts to Exaggerate Its Claim for Sanctions ......................... 2

    II.    Çukurova Holding's Decision Not to Participate in Discovery .............................. 4

ARGUMENT ......................................................................................................................... 6

    I.     The Court Should Decline to Exercise Its Contempt Powers Because
        Its Order Will Not Cause Çukurova Holding to Produce the Desired
        Discovery ................................................................................................................ 6

    II.    Sonera's *Ad Hominem* Attacks Are Both False and Irrelevant
        To the Question Before the Court .......................................................................... 8

    III.   The Court Should Exercise Its Discretion Not to Order a Contempt
        Fine in the Specific Circumstances of This Case ................................................. 10

CONCLUSION .................................................................................................................... 12

– ii –

## **TABLE OF AUTHORITIES**

**CASES**

*Heyman v. Kline*,
    456 F.2d 123 (2d Cir. 1972)……….....………................................................................10

*Int'l Bus. Machs. Corp. v. United States*,
    493 F.2d 112 (2d Cir. 1973)……….....…................................................................……6

*Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*,
    168 B.R. 285 (Bankr. S.D.N.Y. 1994)…..….....…...................................................…10

*S.E.C. v. Princeton Econ. Int'l Ltd.*,
    152 F. Supp. 2d 456 (S.D.N.Y. 2001)…...………...................................................……7

*S.E.C. v. Tome*,
    No. 81 Civ. 1836 (MP), 1987 WL 9415 (S.D.N.Y. Apr. 3, 1987)…..………...................10

*SD Protection, Inc. v. Del Rio*,
    587 F. Supp. 2d 429 (E.D.N.Y. 2008)…..………................................................……..7

*Simkin v. United States*,
    715 F.2d 34 (2d Cir. 1983)…..…..….....……..........................................................6-7

*Soobzokov v. CBS, Inc.*,
    642 F.2d 28 (2d Cir. 1981)…..…..…....…................................................................7

*Spectacular Venture, L.P. v. World Star Int'l, Inc.*,
    927 F. Supp. 683 (S.D.N.Y. 1996)…..………..........................................................7-8

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
    No. CV 09-2990(JS)(WDW), 2010 WL 3034985
    (E.D.N.Y. July 28, 2010)…..…………..................................................................…..6

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008)…..………………….......................................……5

*United States v. Aldeco*,
    917 F.2d 689 (2d Cir. 1990)…..………......................................................................10

*Virginian Ry. Co. v. Sys. Fed'n No. 40*,
    300 U.S. 515 (1937)…..…..…..………………........................................................……7

Respondent Çukurova Holding A.Ş. ("Çukurova Holding") hereby opposes Petitioner's Motion for an Order Compelling Responses to Discovery Requests and Holding Respondent in Contempt (the "Motion").

## PRELIMINARY STATEMENT

Çukurova Holding and its counsel fully understand both the obligations of post-judgment discovery under the Federal Rules and the power of the courts to enforce discovery orders. However, as broad as those powers are, they have practical limits. In this case, Çukurova Holding is a foreign corporation with no assets whatsoever in New York or in the United States. It has no intention of bringing any assets into the United States. It does not conduct business in the United States. Nor do any of its officers or directors reside or regularly travel here, or intend to do so in the future.[1] Under these circumstances, the Court should follow Second Circuit precedent and refuse to enter a contempt order that would be unenforceable and futile.

In the Argument section of this memorandum, we present the decisive practical reasons why this Court should not grant the Motion, and review the Second Circuit and other pertinent authority that supports that conclusion. First, however, it is necessary to correct Sonera's misleading account of how this case has come to the present juncture.

## BACKGROUND

Sonera attempts to paint itself as a good faith litigant confronted with unrelenting recalcitrance on the part of Çukurova Holding. But while it spends pages reviewing what it calls "gamesmanship" by Çukurova Holding, the actual conduct it describes reflects only Çukurova Holding's good faith efforts to seek reasonable protections against Sonera's overly broad

---

[1]  *See* Am. Decl. of Murat Erbilen dated May 18, 2012, at ¶ 4 (Dkt. # 17).

1

discovery demands and the irreparable harm the disclosure of its confidential documents would cause.

### I.   Sonera Misstates the Facts to Exaggerate Its Claim for Sanctions

Following entry of Judgment, Sonera served Çukurova Holding with extensive post-judgment discovery requests, seeking information concerning more than 23 foreign entities other than Çukurova Holding.  Decl. of Pieter Van Tol dated Feb. 20, 2013 (the "Van Tol Decl.") Exs. A-C (Dkt. # 70-1 – 70-3).  Çukurova Holding objected to the Discovery Requests on the grounds that there was no personal jurisdiction and that the requests were otherwise overbroad and improper.[2]  Van Tol Decl. Exs. D-E (Dkt. # 70-4 – 70-5).  The parties briefed the issue in letters to the Court, and the Court issued the November 20 Order limiting the discovery that Sonera could obtain.  Endorsed Letter filed Nov. 20, 2012 (the "November 20 Order") (Dkt. # 34).  This consumed one full month of the post-judgment discovery history.

Soon thereafter, Çukurova Holding produced certain non-confidential documents.  But Çukurova Holding's non-confidential information is very limited, because it is a private Turkish holding company.  Çukurova Holding was particularly concerned about confidentiality for two reasons:  (1) Sonera's counsel in these proceedings is actually being directed by the Alfa Group, a non-party currently embroiled in litigation with Çukurova Holding, and (2) Sonera has always intended to use the discovery it obtains in the United States in other enforcement proceedings

---

[2]  Sonera's representation that Çukurova Holding did not previously rely on the lack of personal jurisdiction as a ground to object to discovery, but merely "preserved" the argument, makes no sense, as that objection has been asserted as the first general objection in each of Çukurova Holding's discovery responses.  *See* Van Tol Decl. Exs. D-E (Dkt. # 70-4 – 70-5).  Çukurova Holding also included the objection in its submissions to the Court concerning discovery.  *See* Letter from D. Lindsey to Hon. D. Cote, dated Nov. 15, 2012 (Dkt. # 33); Letter from D. Lindsey to Hon. D. Cote, dated Dec. 17, 2012 (Dkt. # 54).  Indeed, at that time, Çukurova Holding also filed a motion to vacate the Judgment as void for want of personal jurisdiction.  (Dkt. # 35).

around the world.  *See* Letter from D. Lindsey to Hon. D. Cote dated Dec. 17, 2012 (Dkt. # 54). Thus, to protect against disclosure to the Alfa Group, Çukurova Holding drafted and sought Sonera's consent to the entry of a confidentiality agreement and protective order (the "Protective Order"), which it sent to Sonera on December 3.  *See* Letter from P. Van Tol to Hon. D. Cote dated Dec. 13, 2012, Ex. A (Dkt. # 53).

The parties' negotiation of the Protective Order consumed almost the entire period from December 2012 to early February 2013.  That negotiation was contentious because of Sonera's relentless opposition to restrictions on its sharing of documents with the group of companies that has the real interest in these proceedings, the Alfa Group. In December, the Court ruled against Sonera on this point.  *See* Declaration of Jennifer Gorskie dated February 26, 2013 (the "Gorskie Decl."), Ex. A – Tr. Dec. 19, 2012 AM Conference at 4:13-16.

Because the parties had already agreed the other terms needed for a final Protective Order, the Court's December 19 decision should have resolved the confidentiality issue.  Yet after Çukurova Holding sent a revised Protective Order reflecting the Court's ruling to Sonera on December 20,  Sonera delayed nearly 3 weeks in responding.

When it finally countered on January 8, 2013, Sonera proposed several additional revisions to the Protective Order.  Among its new revisions, Sonera now insisted that documents subject to the Protective Order could be used in other court proceedings without first requiring the court in those proceedings to either adopt the Protective Order or otherwise provide substantially similar protections to maintain confidentiality.  *See* Gorskie Decl. Ex. B – Letter from D. Lindsey to Hon. D. Cote dated January 24, 2013 & Ex. 1.  Under that order, Sonera could circumvent all restrictions on disclosure simply by introducing the protected material in an

3

enforcement proceeding in another jurisdiction. Over Çukurova Holding's objection, the Court entered the form of order proposed by Sonera on January 25, 2013 (Dkt. # 58).

The negotiation and court proceedings leading to the Court's entry of the Protective Order on January 25, 2013 account for an additional two months of discovery proceedings, at least five weeks of which (from the Court's December 19 Order to the entry of a new Order on January 25) reflect delay caused by Sonera insistence on unrestricted sharing with Alfa.

## II.   Çukurova Holding's Decision Not to Participate in Discovery

Sonera's evident desire to share documents with the Alfa Group – which it made every effort to preserve in the process leading to the final Protective Order – has convinced Çukurova Holding that Sonera's real motives are to do it severe harm and that such harm will result directly from the discovery it seeks. Çukurova Holding also believes that the Second Circuit will ultimately overturn the Court's ruling on jurisdiction. For these reasons, Çukurova Holding has decided that it will no longer participate in post-judgment discovery.

Çukurova Holding's appreciates that the Court has made a significant effort to establish a workable framework for discovery. Therefore, following the Court's instruction at the February 7 Court conference, counsel for Sonera and Çukurova Holding again tried to negotiate an amended version of the Protective Order. But again, Sonera would not agree to a provision requiring it to use "best efforts" to ensure the protection of confidential information in foreign proceedings. *See* Van Tol Decl. Ex. N (Dkt. # 70-14).

Ultimately, Çukurova Holding accepted Sonera's version of the Protective Order so that at least some protection would be in place for documents potentially subject to production by third parties pursuant to subpoenas. *Id.* However, Çukurova Holding also made clear that the entry of the Amended Protective Order would not change its decision on its own compliance with discovery. *Id.*

Sonera's attempts to discount Çukurova Holding's concerns do not hold up. For example, Sonera asserts that the Alfa Group is not a competitor of Çukurova Holding. But it is undisputable that Alfa Group has been fighting to wrest control of Çukurova Holding's shares in Turkcell <u>for the last six years</u>. Sonera also insists that Çukurova Holding's concerns regarding the disclosure of confidential information to the Alfa Group are unfounded because the British Virgin Islands litigation between the Alfa Group and Çukurova Holding is drawing to a close. But Çukurova Holding's concerns are not limited to that particular proceeding. The knowledge that the Alfa Group would gain from Çukurova Holding's disclosures in this case – including *inter alia* confidential information relating to its financial position, its business activities since January 2007, and the location of its assets – would give Alfa Group huge, unfair leverage over Çukurova Holding for years to come.[3] Çukurova Holding must, therefore, protect its most sensitive business information from disclosure that is intended to and that will flow directly through to the Alfa Group, which is <u>not</u> a party to this proceeding and does <u>not</u> hold any enforceable judgment or award against Çukurova Holding.

For all of the above reasons, Çukurova Holding has made the decision that it will not comply with post-judgment discovery.

---

[3] Çukurova Holding is not the first company to face this kind of struggle with the Alfa Group's litigious aggression. Indeed, when Judge Lynch sat in this Court he described the Alfa Group's "*history of collusive and vexatious litigation*" with its business partners. *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 598 (S.D.N.Y. 2008). And Sonera itself described the Alfa Group in a previous arbitration as "*precisely the type of entity with which no one would want to be forced to partner*." TeliaSonera Finland Oyj's Statement of Case, *TeliaSonera Finland Oyj v. Çukurova Holding A.Ş.*, Case No. 13977/AVH (Int'l Ct. of Arb. of the Chamber of Comm. June 23, 2006).

**ARGUMENT**

    **I.**    **The Court Should Decline to Exercise Its Contempt Powers Because Its Order Will Not Cause Çukurova Holding to Produce the Desired Discovery**

Çukurova Holding is a Turkish company that does not hold any assets within the jurisdiction of American courts. It is not subject to this Court's coercive powers and, in view of the substantial and irreparable harm that any misuse of Çukurova Holding's confidential business information would cause, it will not change its stance on discovery regardless of what sanction may be ordered. Indeed, Sonera itself acknowledges that Çukurova Holding's position on further discovery is firm. *See* Sonera Mem. of Law in Supp. of Mot. for Order, filed February 22, 2013 (the "Sonera Mem.") at 2 (Dkt. # 69). Thus, while Sonera's proposed contempt formula would quickly produce a nominal sanction in the millions of dollars and then grow exponentially to infinity, that fine will never be collected and therefore will not change Çukurova Holding's conduct.

A court should not exercise its contempt power in these circumstances.[4] As the Second Circuit recognized in *Simkin v. United States*, 715 F.2d 34, 36 (2d Cir. 1983), the purpose of a contempt order is to coerce: "It is familiar ground that a civil contempt sanction is a coercive device, imposed to secure compliance with a court order." (citing *Shillitani v. United States*, 384

---

[4]    The cases Sonera relies on to support its argument that the Court should impose a "substantial" contempt fine are inapposite because they involved parties that plainly were subject to the sanctioning court's jurisdiction and evidently had assets within the jurisdiction. *See* Sonera Mem. at 14-15. The party sanctioned in *International Business Machines Corp. v. United States,* 493 F.2d 112 (2d Cir. 1973), was one of the country's best-known blue-chip companies. Further, the parties sanctioned in *State Farm Mutual Automobile Insurance Co. v. Cohan,* No. CV 09-2990(JS)(WDW), 2010 WL 3034985 (E.D.N.Y. July 28, 2010) were an individual New York resident and three operators of dental clinics in the New York area. *See* Complaint at ¶¶ 6-9, *State Farm Mut. Auto. Ins. Co. v. Cohan,* No. CV 09-2990(JS)(WDW) (E.D.N.Y. July 13, 2009) (Dkt. # 1). Unlike Çukurova Holding, therefore, the sanctioned parties in those cases were plainly susceptible to the coercive effect of a contempt fine.

U.S. 364 (1966)).  Because contempt proceedings are equitable in nature,[5] "a court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff."  *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 550 (1937).

Accordingly, courts should not issue contempt orders that cannot compel compliance with the court's underlying order.  *Soobzokov v. CBS, Inc.,* 642 F.2d 28, 31 (2d Cir. 1981) (finding that district court abused its discretion in imposing a contempt fine when circumstances demonstrated that contemnor would not be coerced to testify).  On this basis, courts in this Circuit have consistently acknowledged practical limits on their enforcement powers and declined to issue contempt orders where, as here, there was no reasonable prospect for enforcement.

For example, the court recognized this principle in *SD Protection, Inc. v. Del Rio,* 587 F. Supp. 2d 429 (E.D.N.Y. 2008), where it refused to issue an order holding the plaintiff's CEO and sole shareholder in contempt for plaintiff's failure to comply with the court's discovery orders. Although the court found that the CEO's conduct was contumacious, the court noted that she was located in Florida, and "there has been no suggestion that she is likely to come to New York or the surrounding area in the foreseeable future." *Id.* at 435.  Thus, the court "decline[d] to impose that remedy . . . as it is unable to conclude that such a remedy would be effective." *Id.*

Similarly, in *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 685-86 (S.D.N.Y. 1996), the court refused to issue a contempt order against the president of the defendant following the defendant's failure to make payments under a consent decree because he was located outside the jurisdiction, in Texas.  The court explained, "if an order of arrest would

---

5   *S.E.C. v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456, 458 (S.D.N.Y. 2001).

be likely to produce the desired result, the Court would issue it.  Unfortunately, it appears that it would be ineffective." *Id.* at 685.

Just as in these cases, any contempt order issued here cannot be enforced against Çukurova Holding, and thus it would have no coercive effect and would be futile.  Such futility requires denial of Sonera's Motion.[6]

### II. Sonera's *Ad Hominem* Attacks Are Both False and Irrelevant To the Question Before the Court

Sonera does not even discuss whether the sanction it seeks has any potential to bring about discovery compliance.  Instead, erroneously arguing as if *punishment,* rather than coercion, were the purpose of the contempt order it seeks, Sonera relentlessly attacks Çukurova Holding's character and motives.  Thus it says, Çukurova Holding's "behavior shows nothing but disrespect for the Court, Sonera and the U.S. justice system."  Sonera Mem. at 2.  Then, as a purported example of that disrespect, it claims that Çukurova Holding "has even stooped to criticizing the Court in foreign proceedings."  *Id.* at n.2.

Those claims are not only irrelevant to the Court's evaluation of the Motion; they are also false.  Çukurova Holding has demonstrated its respect for this Court by engaging New York counsel from the outset at considerable expense and by appearing in this proceeding to explain the reasons why there is no basis for the Court to exercise jurisdiction.  Clearly there is nothing disrespectful about Çukurova Holding's disagreement with the Court's jurisdictional ruling and its appeal therefrom.[7]

---

[6] Sonera's request for attorneys' fees should be denied for the same reasons.

[7] Likewise, in the statement to the Dutch court that Sonera grossly mischaracterizes in its memorandum, Çukurova Holding said no more than that it disagreed with this Court's ruling. Çukurova Holding has previously addressed the nature of the communications to the Dutch court. *See* Gorskie Decl. Ex. B.  The Court should not credit Sonera's uncertified (and

8

Nor do the company's decision not to comply with discovery and opposition to this Motion reflect disrespect for the Court. As explained above, as a practical matter, Çukurova Holding is beyond the enforcement powers available to this Court. It has therefore come before the Court to explain that in light of (i) its disagreement with the Court's jurisdictional ruling; and (ii) the risk of irreparable harm to its business resulting from the potential misuse of its confidential business information, it has made a considered decision not to participate in further discovery. Such candor is not disrespect. In fact, by participating in post-judgment proceedings and providing this forthright explanation as to why it will not comply with the Court's orders, Çukurova Holding has dealt with the Court in a far more straightforward and respectful manner than Sonera.

In contrast, Sonera falsely told the Court that the purpose of these proceedings was "to enforce the Final Award, as a Court judgment, against any Çukurova [Holding] assets that may be found in New York or elsewhere in the United States (now or in the future)." Pet. Reply Mem. in Further Supp. of Pet. to Confirm Foreign Arbitral Award at 14 (Dkt. # 20). This Court explicitly relied on that representation in its September 10 Order granting Sonera's Petition. September 10 Opinion and Order at 21 (Dkt. # 24). Yet the focus of Sonera's discovery requests has been on assets that, if they exist at all, would be located wholly outside of the United States; it knows perfectly well that there is nothing here.

More fundamentally, however, any debate about which party is respecting or not respecting the Court is a distraction from the core issue of whether this Court's contempt order would be effective. For the reasons explained above, it would not be effective and, as such, issuance of such an extraordinary order is inappropriate.

---

inaccurate) translation of the Dutch original of Çukurova Holding's submission to the Dutch court in any event. *See* Van Tol Decl. ¶ 8 & *id.* Ex. G.

### III. The Court Should Exercise Its Discretion Not to Order a Contempt Fine in the Specific Circumstances of This Case

Sonera argues that this Court has the *power* to issue a contempt fine against Çukurova Holding even though the Court's finding of jurisdiction is presently on appeal. *See* Sonera Mem. at 9-10.[8] Yet the pertinent question is not whether the Court *may* issue a contempt fine, but instead whether it *should* do so. Here, two unique circumstances should persuade the Court to exercise its broad discretion not to sanction Çukurova Holding for declining to engage in further discovery and, therefore, to deny Sonera's motion for a contempt fine.[9]

*First,* Çukurova Holding has appealed the Court's underlying September 10 Order and resulting Judgment *inter alia* on the ground that the Court lacks personal jurisdiction over Çukurova Holding. At a minimum, Çukurova Holding's appeal raises substantial issues of fact and law concerning this Court's conclusion in the September 10 Order that Çukurova Holding is subject to general jurisdiction in New York. If Çukurova Holding prevails on appeal, the basis for any contempt order will fall away.[10] Yet, there would be no remedy for the consequences of any discovery that already occurred. *That harm will be irreparable.* In that scenario, Sonera (and the Alfa Group) would have permanently gained their principal objective in starting these proceedings even after an appellate court has ruled that the proceedings were invalid and that this

---

[8] The cases Sonera relies on are to the same effect. *See, e.g., S.E.C. v. Tome,* No. 81 Civ. 1836 (MP), 1987 WL 9415, at *1 (S.D.N.Y. Apr. 3, 1987) (stating that "the district court's *power* to act in aid of execution of its judgment is not impaired by the filing of an appeal") (emphasis added).

[9] It is well-established *that* "district courts retain broad discretion to enforce discovery obligations." *United States v. Aldeco,* 917 F.2d 689, 690 (2d Cir. 1990).

[10] *See, e.g., Heyman v. Kline,* 456 F.2d 123, 131 (2d Cir. 1972) ("judgments of civil contempt fall when the order underlying them is vacated"); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 168 B.R. 285, *291* (Bankr. S.D.N.Y. 1994) ("It is . . . beyond cavil that the claim for civil contempt must fall if the order that was disobeyed is subsequently reversed . . . or its issuance exceeded the power of the issuing court.").

Court never had a basis to require discovery.  Sonera has identified no precedent for sanctions in this unusual circumstance.

*Second,* the magnitude of the billion dollar appellate bond demanded by Sonera makes it impossible for Çukurova Holding to seek a formal stay of discovery.  Even if Sonera would agree to a much smaller bond, it would be nonsensical for Çukurova Holding to post it.  The foundation of Çukurova Holding's objection to jurisdiction is that it has no activities *and no assets* in the United States.  Yet by posting a bond, Çukurova Holding effectively would be making assets in the bonded amount available for execution in New York.  As a practical matter, this would create an enforcement power in this Court that does not exist today.  Çukurova Holding will not do this.

These two factors weigh heavily against the imposition of sanctions in this case.

**CONCLUSION**

Sonera knows full well that this forum has no connection with the underlying dispute, with the arbitration proceeding, or with Çukurova Holding itself. Its decision to come here, which it supported by misrepresenting its real objectives, has led to these prolonged, yet self-evidently *futile,* post-judgment proceedings. In these circumstances, a nominally massive but unenforceable contempt award does not serve the purposes of this Court and will achieve no benefit for Sonera. The Court should deny the Motion in all respects.

Dated:     New York, New York
           February 26, 2013

                                      Respectfully Submitted,

                                      /s/ Peter R. Chaffetz
                                         Peter R. Chaffetz
                                         David M. Lindsey
                                         Andreas A. Frischknecht
                                         Jennifer L. Gorskie

                                    CHAFFETZ LINDSEY LLP
                                    505 Fifth Avenue, 4th Floor
                                    New York, NY 10017
                                    Tel. (212) 257-6960
                                    Fax (212) 257-6950
                                    d.lindsey@chaffetzlindsey.com
                                    www.chaffetzlindsey.com

                                    *Attorneys for Çukurova Holding A.Ş.*