UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration Between

SONERA HOLDING B.V.,

                      Petitioner,

and

ÇUKUROVA HOLDING A.Ş.,

                      Respondent.



Civil Action No. 11-CV-08909 (DLC)(FM)

## ORDER

This matter came before the Court upon the motion of petitioner Sonera Holding B.V. ("Sonera"), by Order to Show Cause dated April 8, 2013, for turnover, preliminary injunction and increased contempt fines (the "Motion"). The Court having considered the parties' submissions filed in connection with the Motion, as well as all the pleadings and proceedings in this action, including the refusal of respondent to participate in discovery in connection with the enforcement of the judgment and its contempt of Court, and having heard the oral argument of counsel at a hearing on April 16, 2013,

IT IS ORDERED that Sonera's application for a preliminary injunction is GRANTED, based on the findings of fact and conclusions of law contained herein, to the extent set forth below.

IT IS FURTHER ORDERED, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure (the "Federal Rules"), that, pending the Court's final determination of Sonera's application in the Motion for turnover under Section 5225(a) of the New York Civil Procedure Law and Rules (the "CPLR"), respondent Çukurova Holding A.Ş. ("Çukurova") and its officers, agents, servants, employees, and attorneys, and any person acting in concert with, or on behalf of,

the foregoing, including Mehmet Emin Karamehmet and any financial institutions, are preliminarily enjoined from selling, transferring, assigning, hypothecating or pledging Çukurova's funds and property in an amount sufficient to satisfy the judgment entered by the Court on September 21, 2012 confirming an arbitral award in favor of Sonera (the "Judgment"), including, but not limited to, the following:

(a) any funds that Çukurova receives in connection with its effort to raise financing for the redemption of shares in two entities that control Turkcell İletişim Hizmetleri A.Ş. and were pledged as collateral for a 2005 loan (the "Redemption Transaction"), as set forth in further detail below;

(b) Çukurova's right to redeem such shares in the Redemption Transaction; and

(c) Çukurova's interests in the following entities: (i) Noksel Celik Boru Sanayi A.Ş.; (ii) Banque de Commerce et de Placements; (iii) DP Acquisitions B.V.; (iv) Geden Lines (Geden Denizcilik); (v) Genel Energy plc; (vi) Çukurova Finance International Limited; (vii) Çukurova Telecom Holdings Limited; (viii) Baytur Insaat Taahhüt A.Ş.; and (ix) Equipment and Parts Export Inc.

IT IS FURTHER ORDERED that no posting of security by Sonera shall be required in connection with the preliminary injunction.

IT IS FURTHER ORDERED that this preliminary injunction may be enforced by any remedy available under the law, including contempt of Court.

In support of the issuance of the preliminary injunction, the Court enters the following findings of fact and conclusions of law under Rules 52(a) and Rule 65(d) of the Federal Rules:

### Findings of Fact

*Litigation in British Virgin Islands ("BVI")*[1]

1. Since 2007, Çukurova has been involved in litigation in the BVI with Alfa Telecom Turkey Ltd. ("ATTL") regarding Çukurova's 100% shareholding in Çukurova Finance International Limited ("CFI") and CFI's 51% shareholding in Çukurova Telecom Holdings Limited ("CTH"). Through a third entity, Turkcell Holding A.Ş., CFI and CTH have a controlling interest in Turkcell İletişim Hizmetleri A.Ş. ("Turkcell"). The Court will refer to Çukurova's shareholding in CFI and CFI's shareholding in CTH as the "Turkcell Shares."

2. The BVI litigation involving ATTL and Çukurova (to which CFI is also a party) arose out of a 2005 transaction in which ATTL agreed to lend $1.352 billion to CFI, which was secured by equitable mortgages under English law over the Turkcell Shares.

3. In April 2007, ATTL declared a default and accelerated the repayment of the loan to CFI. At the same time, ATTL commenced proceedings in the BVI relating to acceleration and the demand for immediate repayment. Later in April 2007, ATTL appropriated the Turkcell Shares under the terms of the security agreements relating to the loan.

4. In May 2007, Çukurova and CFI also commenced proceedings in the BVI against ATTL seeking an order requiring ATTL to accept certain sums tendered in relation to the loan and to redeem the Turkcell Shares. The Court will refer to the BVI actions brought by ATTL, Çukurova and CFI collectively as the "ATTL-Çukurova Proceedings."

---

[1] The facts set forth in Paragraphs 1 through 5 below are a summary of the BVI litigation, for purposes of background to the Redemption Transaction, and they are derived from the Judgment of the Judicial Committee of the Privy Council (the "Privy Council") described in Paragraph 5.

3

5. Following a series of rulings in the ATTL-Çukurova Proceedings in 2009 and 2010 regarding the acceleration of the loan and appropriation of the Turkcell Shares, Çukurova and CFI appealed to the Privy Council. On January 30, 2013, the Privy Council issued a judgment (the "January 2013 Judgment") finding that there was an event of default on the loan and that ATTL was entitled to appropriate the Turkcell Shares. The Privy Council also found that the right to seek relief from forfeiture of the Turkcell Shares should be afforded to Çukurova and CFI. The parties in the current action before the Court have described this potential relief as the right to redeem the Turkcell Shares, which the Court will refer to as the "Redemption Right."

6. Following the issuance of the January 2013 Judgment, the Privy Council conducted further proceedings to determine the sum to be paid to ATTL to redeem the Turkcell Shares. The parties agree that the amount will range approximately from $1.5 to $3 billion. The Privy Council's decision regarding the redemption amount is expected to be issued imminently.

*Redemption Right and Related Property/Funds of Çukurova*

7. In its submissions to this Court, including the Affidavit of Mr. Karamehmet in connection with Sonera's enforcement proceeding in the BVI dated March 22, 2013 (the "Karamehmet Affidavit") and the Declaration of John Reynolds dated April 12, 2013, Çukurova made clear its intention to exercise the Redemption Right in the Redemption Transaction.

8. According to Çukurova, it would have to borrow funds from third-party lenders in order to pay the redemption amount decided by the Privy Council. (Karamehmet Aff. ¶ 6(d).) Çukurova is currently engaged in discussions with "major banks" for the purpose of arranging such financing and it anticipates that a syndicate of lenders would be formed. Çukurova refused to identify the financial institutions that are involved in the discussions (*id.* ¶¶ 37-40) in response to questioning by the Court at the April 16, 2013 hearing.

9. As described in the Karamehmet Affidavit, the syndicated loan for the Redemption Transaction would be collateralized through a "security package." Mr. Karamehmet states that the "security package" would include the Turkcell Shares as well as other assets. (*Id.* ¶¶ 41-49.)

10. The Karamehmet Affidavit identifies the "assets in CH's accounts" which could form part of the "security package" (in addition to the Turkcell Shares). (*Id.* ¶ 63(c).)[2] Those Çukurova assets include its interests in (a) Noksel Celik Boru Sanayi A.Ş. ("Noksel") (*id.* ¶¶ 65-67); (b) DP Acquisitions B.V. ("DP Acquisitions") (*id.* ¶¶ 72-75); and (c) Geden Lines ("Geden") (*id.* ¶¶ 79-80). At the April 16 hearing, Çukurova's counsel did not deny that Çukurova had an interest in these assets. As a result, the Court finds that Çukurova has an interest in Noksel, DP Acquisitions and Geden.

11. The Karamehmet Affidavit also lists the shareholdings in Banque de Commerce et de Placements ("BCP") and Genel Energy plc ("Genel') as Çukurova assets available for inclusion in the "security package." (*Id.* ¶¶ 68-70, ¶¶ 81-82.) Mr. Karamehmet describes the BCP and Genel interests as "assets in CH's accounts" (*id.* ¶ 63(c)), just like the other interests listed in the Karamehmet Affidavit, and includes the BCP and Genel interests in the section of the Karamehmet Affidavit regarding the other Çukurova assets that could be included in the "security package." The BCP interests were reflected in Çukurova's 2010 accounts (as of December 31, 2009) as being held by Çukurova and its subsidiaries, but were transferred in 2010 to Karamehmet family members without any indication in the accounts of consideration being paid. (*See* Declaration of Iain Tucker, dated June 1, 2012, ¶¶ 14-15.) This evidence, which Çukurova has never rebutted, provides further support for the finding that the BCP interests are freely transferrable and constitute property available to satisfy the Judgment.

---

[2] In the Karamehmet Affidavit, "CH" refers to Çukurova. (*Id.* ¶ 1.)

5

12. Also, when the Court asked counsel for Çukurova at the April 16, 2013 hearing if he could represent that Çukurova has no interest in BCP or Genel, counsel was unable to provide such a representation. Accordingly, the Court finds that Çukurova has an interest in BCP and Genel.

13. In addition to the above, Sonera has sought turnover of Çukurova's interests in (a) CFI; (b) CTH; (c) any funds that Çukurova receives in connection with the financing of the Redemption Transaction; (d) the Redemption Right; (e) Baytur Insaat Taahhüt A.Ş. ("Baytur"); and (f) Equipment and Parts Export Inc. ("EPE").

14. Çukurova has conceded that it has an ownership interest in Baytur (*see, e.g.*, Br. in Opp'n to Mot., 21 (referring to a 19% stake)) and, with respect to EPE, the Court takes judicial notice of the website for EPE describing the New York office as "the gateway to the Americas for Çukurova." (Declaration of Pieter Van Tol, dated June 1, 2012, Ex. E.) Çukurova's submissions confirmed its interest in EPE and the fact that EPE is still registered to do business in New York. (Declaration of Sekip Senturk, dated Nov. 21, 2012, ¶ 5.) Therefore, the Court finds that Çukurova has an interest in Baytur and EPE.

15. Çukurova also does not dispute that it has interests in the Turkcell Shares and the financing funds (*see, e.g.*, Karamehmet Aff., ¶ 6(b) (referring to Çukurova's "interest in the [Turkcell] Shares")), but it has noted that they are contingent only. As discussed below, New York law on turnover does not distinguish between present and future or contingent interests. Thus, the Court finds that Çukurova has an interest in CFI, CTH and the financing funds.

16. Finally, Çukurova's interest in the Redemption Right is undisputed. Çukurova's submissions demonstrate that it currently holds the Redemption Right. The Redemption Right, therefore, is property within the meaning of the turnover statute.

17. In sum, the Court finds that Çukurova has an interest in all of the funds, property and rights that are the subject of the preliminary injunction.

*Facts Relating to Irreparable Harm*

18. Sonera has shown a likelihood of proving at any final hearing that, if Çukurova were to complete the Redemption Transaction, Sonera would lose the opportunity to enforce the Judgment through turnover of the Redemption Right as well as the various funds and interests related to that right.

19. Çukurova asserts that, in the discussions regarding the Redemption Transaction, potential lenders have informed Çukurova they would insist on a first-ranking pledge on the Turkcell Shares. (*Id.*, ¶ 47.) Accepting that assertion, the Court finds that the completion of the Redemption Transaction would likely prevent Sonera from enforcing the Judgment against the encumbered Turkcell Shares and any other asserts pledged in the security package.

## Conclusions of Law

A. In deciding Sonera's application for a preliminary injunction, the Court has considered (a) whether there is either (i) a likelihood of success on the merits of Sonera's claim for turnover of Çukurova's money and property; or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation; (b) whether Sonera would suffer irreparable harm in the absence of injunctive relief; (c) whether the balance of hardships tips in Sonera's favor; and (d) whether the public interest would be disserved by the issuance of a preliminary injunction.

B. The Court determines that there is a likelihood of Sonera's success on the merits of its turnover claim. Turnover is mandatory where, as in this case, the judgment creditor has identified money and property of the judgment debtor. Such money and property includes "any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested . . . ." CPLR § 5201(b). In light of the Court's findings

7

regarding Çukurova's interest in the money and property described in Paragraphs 7 through 17 above, there is a likelihood that Sonera will prevail on its turnover claim against Çukurova.

  C. In the alternative, the Court also concludes that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips decidedly in Sonera's favor. The evidence adduced on the turnover issue demonstrates, at a minimum, that there are serious questions on the merits.

  D. The Court concludes that Sonera would suffer irreparable harm if a preliminary injunction were not granted because it would not be able to obtain the turnover of all or most of the money and property described in Paragraphs 7 through 17. The Court has the power to enter a preliminary injunction in order to preserve its ability to grant effective final relief in this action. Moreover, the injury to Sonera would not be compensable through money damages because Çukurova has repeatedly demonstrated that it will not pay such damages to Sonera and, in any event, many of the valuable interests described above would likely be encumbered following the Redemption Transaction, which means that they would not be available to satisfy the Judgment.

  E. The Court concludes that the balance of hardships tips in Sonera's favor. As discussed above, Sonera would lose an opportunity to satisfy the Judgment if an injunction were not entered and, based on the unrebutted evidence regarding Çukurova's prior actions, Sonera would face the prospect of additional dissipation of assets by Çukurova in the absence of injunctive relief. On the other hand, any harm to Çukurova would be entirely of its own making. Çukurova has chosen to ignore the Judgment and, at the same, it has not obtained a stay of enforcement. Çukurova must bear the consequences of its actions, which consequences it could avoid by paying the Judgment.

F.  Finally, the Court concludes that the public interest would not be disserved by the issuance of a preliminary injunction. The public has an interest in the effective enforcement of foreign arbitral awards, and no comparable interest in the Redemption Transaction that would be disserved by the issuance of a preliminary injunction.

G.  Accordingly, the Court determines that the granting of a preliminary injunction is warranted by the facts and the law.

H.  The Court also exercises its discretion to waive the requirement of security pursuant to Rule 65(c) of the Federal Rules. Sonera has a likelihood of success on the merits, given the mandatory nature of CPLR § 5225(a) and the evidence presented to the Court, and Çukurova cannot claim to suffer harm when its liability to Sonera has already been established in the Judgment. Moreover, in the unlikely event that the preliminary injunction is wrongful, Çukurova would have recourse to money damages against Sonera, which appears to be solvent and not a collection risk. In addition, Çukurova has continued to retain and enjoy the benefit of the amount of the Judgment by refusing to pay the approximately $1 billion that it owes Sonera. Under the circumstances, the Court holds that it is not necessary for Sonera to post security in connection with the preliminary injunction.

Dated: April 18, 2013

3 25 p.m.

_____
Hon. Denise Cote
United States District Judge