UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration Between

SONERA HOLDING B.V.,

                    Petitioner,

          and

ÇUKUROVA HOLDING A.Ş.,

                    Respondent.

Civil Action No. 11-CV-08909 (DLC)(FM)

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR AN ANTI-SUIT INJUNCTION**

HOGAN LOVELLS US LLP

Pieter Van Tol
Andrew Behrman
Erin Meyer

875 Third Avenue
New York, NY  10022
(212) 918-3000
pieter.vantol@hoganlovells.com

*Attorneys for Petitioner Sonera
Holding B.V.*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................... 1

Background .............................................................................................................................. 3

Argument ................................................................................................................................. 6

I.      The Court Should Issue an Anti-Suit Injunction Against Çukurova Under Rule 65 of the Federal Rules .................................................................... 6

     A.      The Threshold Requirements from *China Trade* Are Easily Satisfied Here ........................................................................................ 8

     B.      The Additional *China Trade* Factors Weigh Heavily in Favor of an Injunction ................................................................ 8

         1.      The BVI Motion's Threat to Jurisdiction and Public Policy of Forum ............................................................ 8

         2.      Çukurova's Vexatious Conduct ................................................ 10

         3.      The BVI Motion Will Cause Delay, Needless Expense and a Race to Judgment ............................................ 11

         4.      The Equitable Considerations Favor the Entry of an Anti-Suit Injunction ...................................................... 11

     C.      The Motion Meets the Other Requirements for the Issuance of a Preliminary Injunction ....................................................... 12

II.      An Anti-Suit Injunction Is Also Warranted Under the All Writs Act ..................................................................................................................... 14

III.      The Relief Sought by Sonera Is Limited to the BVI Motion ................................ 14

Conclusion ............................................................................................................................ 15

\\NY - 002507/000004 - 2590045 v3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
    2010 WL 1050988 (S.D.N.Y. Mar. 23, 2010) ........................................6, 10, 14, 15

*Arciniaga v. General Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006).........................................................................10

*Cardell Fin. Corp. v. Suchodolski Assoc., Inc.*,
    261 F. App'x 324, 2008 WL 214022 (2d Cir. Jan. 25, 2008) ...................9

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
    837 F.2d 33 (2d Cir.1987)...................................................................6, 7, 8, 12

*De Beers Consol. Mines, Ltd. v. United States*,
    325 U.S. 212 (1945)....................................................................................13

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*,
    441 F. Supp. 2d 552 (S.D.N.Y. 2006)..................................................9, 12

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    500 F.3d 111 (2d Cir. 2007).......................................................... *passim*

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984)....................................................................7

*Mason Tenders Dist. Council Pension Fund v. Messera*,
    1997 WL 223077 (S.D.N.Y. May 7, 1997) ...............................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................10

*Motorola Credit Corp. v. Uzan*,
    2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) .................................................9

*Motorola Credit Corp. v. Uzan*,
    274 F. Supp. 2d 481 (S.D.N.Y. 2003)......................................................15

*Motorola Credit Corp. v. Uzan,*
    388 F.3d 39 (2d Cir. 2004).........................................................................11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d. Cir. 2004)....................................................6, 8, 9, 10, 12

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
    737 F. Supp. 1521 (S.D. Cal. 1989).........................................................13

ii

*Republic of Philippines v. Marcos,*
  806 F.2d 344 (2d Cir. 1986)...................................................................................13

*Sheet Metal Contractor's Ass'n v. Sheet Metals Workers' Int'l Ass'n,*
  157 F.3d 78 (2d Cir. 1998).....................................................................................14

*Societe Internationale v. Rogers,*
  357 U.S. 197 (1958)...............................................................................................11

*Software AG, Inc. v. Consist Software Solutions, Inc.,*
  2008 WL 563449 (S.D.N.Y. Feb. 21, 2008)............................................................9

*Software AG, Inc. v. Consist Software Solutions, Inc.,*
  323 F. App'x 11, 2009 WL 792839 (2d Cir. Mar. 27, 2009) .................................13

*Storm LLC v. Telenor Mobile Commc'ns AS,*
  2006 WL 3735657 (S.D.N.Y. Dec. 15, 2006) .........................................6, 9, 10, 15

*Suchodolski Assoc., Inc. v. Cardell Fin. Corp.,*
  2006 WL 10886 (S.D.N.Y. Jan. 3, 2006) ..........................................................9, 10

*United States v. Int'l Bhd. of Teamsters,*
  266 F.3d 45 (2d Cir. 2001)......................................................................................14

*United States v. Int'l Bhd. of Teamsters,*
  72 F. Supp. 2d 257 (S.D.N.Y. 1999).......................................................................14

## STATUTES

28 U.S.C. § 1651(a) ......................................................................................................14

Fed. R. Civ. P. 65(d)(2).................................................................................................15

New York Civil Practice Law and Rules § 5225(a) ..........................................4, 5, 13

iii

Petitioner Sonera Holding B.V. ("Sonera") respectfully submits this memorandum of law, together with the Declaration of Pieter Van Tol dated April 30, 2013 ("Van Tol Decl."), in support of its motion (the "Motion"), pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, for an injunction preventing respondent Çukurova Holding A.Ş. ("Çukurova") from proceeding with the pending motion in the British Virgin Islands for an anti-suit injunction (the "BVI Motion"), which has the goal of depriving this Court of jurisdiction and barring Sonera from taking steps in this action to enforce the Judgment.

### Preliminary Statement

The BVI Motion seeks to defeat the Court's jurisdiction and cripple Sonera's ability to enforce the Judgment in this proceeding. As discussed below, the relief sought in the BVI Motion is sweeping and the granting of the BVI Motion would prevent Sonera from doing anything that has an effect — or a potential effect — on Çukurova's redemption of the Turkcell Shares. Thus, the BVI Motion, if granted, could (a) cause Sonera to seek the dismissal of the preliminary injunction entered by the Court on April 18, 2013 (the "PI Order"); (b) prevent Sonera from seeking the turnover relief to which it is clearly entitled under New York law; and (c) bar Sonera from seeking any other relief that could affect the Redemption Transaction, which includes anything that relates to Çukurova's financing of the Redemption Transaction (such as seeking contempt fines or serving information subpoenas on potential lenders). In short, the BVI Motion has the express goal of stopping this enforcement action in its tracks.

That is an improper purpose under U.S. law, especially since Sonera does not have the same enforcement relief available to it in the BVI proceeding. When a party so blatantly tries to use a foreign action to strip the U.S. court of its rightful jurisdiction and interfere with the enforcement of an arbitral award, courts have not hesitated to issue anti-suit injunctions.

Çukurova chose to participate in this action and contest personal jurisdiction, but after the Court found against it and began to enforce the Judgment in accordance with New York law, Çukurova decided to attack this Court's rulings collaterally in another forum rather than relying on the appellate process. Çukurova's latest actions are in keeping with its pattern of vexatious conduct in this case. Çukurova has simply disregarded orders that it does not like, willingly incurring large contempt fines for its disobedience, and now seeks to interfere with the Court's jurisdiction. The Court should put a halt to Çukurova's attempted "end run" and protect its jurisdiction by issuing an anti-suit injunction.

In the context of international arbitrations, it is commonplace and necessary for there to be parallel proceedings in multiple jurisdictions to enforce an award. Here, in addition to this Court, Sonera has sought enforcement in the BVI, England, The Netherlands (including the Netherlands Antilles) and Switzerland. Prior to the filing of the BVI Motion, Çukurova had not suggested that any one of those enforcement proceedings should trump another. With the BVI Motion, however, Çukurova seeks to oust the jurisdiction of this Court. Moreover, the BVI Motion arises out of Çukurova's attempt to protect the Redemption Right, which was granted in an action between Çukurova and Alfa that does not even involve Sonera. As a judgment creditor, Sonera has the right to seize assets regardless of the effect on other disputes.

It is well settled that comity issues are not implicated where, as here, a party seeks to use the foreign court to deprive a U.S. court of jurisdiction. By contrast, Sonera's actions, with respect to the both the parallel proceedings and this Motion, are wholly consistent with comity. Significantly, in the Motion, Sonera does not seek to interfere with the BVI Court's ruling with regard to the injunction that Sonera sought under BVI law, the pending appeal from the BVI Court's denial of the injunction or any other aspects of the BVI proceeding. Instead, the Motion

2

is narrowly focused and in keeping with comity because it is <u>solely</u> aimed at prohibiting Çukurova from using the BVI Motion to defeat this Court's jurisdiction and derail the valid enforcement of the Judgment under New York law.

There is a much simpler way for Çukurova to preserve the Redemption Right, rather than bringing the BVI Motion and forcing Sonera to respond through this Motion. As the Court noted, Çukurova should pay the Judgment so it may proceed as it sees fit.

### Background

Çukurova filed the BVI Motion and related materials on April 26, 2013. (*See* Exs. 1-2 to Van Tol Decl.) The Notice of Application states that Çukurova is seeking an order of breathtaking scope that would require Sonera, Alfa Telecom Turkey Limited ("ATT") and Altimo Holdings & Investments Ltd. ("Altimo") to:

> a. [ . . . ] do everything within their power to discontinue or otherwise bring an end to the temporary restraining order and preliminary injunction obtained from the United States District Court for the Southern District of New York (the "New York Court") on 8 April and 18 April 2013 respectively; and
>
> b. [ . . . ] not cause or seek to cause the New York Court to grant any other relief which would have the effect (or potential effect) of preventing CH [*i.e.*, Çukurova Holding A.Ş.] and/or its wholly owned subsidiary, Çukurova Finance International Limited ("CFI" and, together with CH, "Çukurova")) from recovering shares charged to Alfa (the "Charged Shares"), pursuant to the judgment of the Privy Council dated 30 January 2013 (including, but not limited to (i) any final injunction in the same or materially equivalent terms as the preliminary injunction referred to above and (ii) any order for turnover).

(Van Tol Decl., Ex. 1, 2.) Thus, the BVI Motion is not just aimed at protecting the Redemption Right; it seeks to eliminate this proceeding or render it ineffective.

3

In support of the BVI Motion, Çukurova submitted the Affidavit of John Simon Reynolds dated April 26, 2013 (the "Reynolds Affidavit"). Mr. Reynolds was present in Court for the April 16, 2013 hearing, at which he never asserted that undersigned counsel had misrepresented the facts relating to the BVI proceeding. He also filed a declaration in opposition to Sonera's motion for a preliminary injunction. Among other things, Mr. Reynolds claims in the Reynolds Affidavit that (a) the relief that Sonera obtained from this Court is "directly contradictory" to the injunction that the BVI Court declined to enter; (b) counsel for Sonera misled the Court with respect to the relief sought from the BVI Court; and (c) the PI Order renders "nugatory" the relief granted by the Privy Council. (Van Tol Decl., Ex. 2 (Reynolds Aff.), ¶¶ 6(7), 43-44 and 51.) Mr. Reynolds further suggests that the Court failed to pay sufficient attention to comity because the issue is not mentioned in the PI Order. (*Id.*, ¶ 46.) The assertions in the Reynolds Affidavit do not withstand scrutiny.

It is evident from the parties' submission and the argument at the April 16 hearing that the Court gave full consideration to the issue of comity, including whether the relief sought in the two jurisdictions is the same. (*See* Van Tol Decl., Ex. 3, 8-9, 14-15, 19-20 and 32-34.) The Court correctly found that Sonera's application for injunctive relief was based on New York law, which is very different from BVI law with respect to, among other things, the ability of judgment creditors to seize property in other jurisdictions and rights that are contingent. Under New York law, the Redemption Right is like any other property right and it must be turned over pursuant to the mandatory provisions of Section 5225(a) of the New York Civil Practice Law and Rules (the "CPLR"). Thus, the relief in the PI Order does not contradict the BVI Court's denial of Sonera's request for an injunction under BVI law because, in the two jurisdictions, Sonera sought different relief based on different law (and an application of such law to different facts).

4

Moreover, the PI Order does not render "nugatory" the relief granted by the Privy Council. As Sonera discussed in its submissions to the Court on the motion for a preliminary injunction, the Privy Council gave Çukurova the opportunity to redeem the Turkcell Shares; it did not direct that the Redemption Right must be exercised. In addition, the Privy Council did not rule that the Redemption Right must remain inviolate and could not be seized by a judgment creditor. The PI Order held that, because Çukurova possesses the Redemption Right by virtue of the Privy Council ruling, such a right must be turned over to Sonera under CPLR § 5225(a) and the undisputed case law construing the turnover statute. The Court noted at the April 16 hearing Çukurova that has the power to protect the Redemption Right from turnover by paying the Judgment owed to Sonera. (Van Tol Decl., Ex. 3, 9.)

Finally, Mr. Reynolds cannot claim that the Court was misled regarding the BVI proceedings. In opposition to the motion for a preliminary injunction, Çukurova submitted to the Court voluminous materials from the BVI proceedings, including its own counsel's descriptions of the March 27, 2013 ruling by the BVI Court. Mr. Reynolds attended the Court hearing on April 16 and could have asked Çukurova's U.S. counsel (with whom he repeatedly conferred) to correct any statements that he felt were inaccurate. At bottom, Çukurova is attempting to create an issue where none exists. At the April 16 hearing, Sonera's counsel accurately pointed out to the Court that, in the application for a preliminary injunction, Sonera was "moving before you on wholly separate grounds under New York law." (*Id.*, 33.) That critical fact distinguishes the PI Order from the injunction that Sonera sought from the BVI Court.

\\NY - 002507/000004 - 2590045 v3

<u>**Argument**</u>

I. **The Court Should Issue an Anti-Suit Injunction Against Çukurova Under Rule 65 of the Federal Rules**

It is "beyond question" that a district court has the power to enjoin a party before it from pursuing litigation in another jurisdiction. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d. Cir. 2004); *see also Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG), 2010 WL 1050988, at *4 (S.D.N.Y. Mar. 23, 2010) ("The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established.") (quoting *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir.1987)). Anti-suit injunctions are particularly appropriate where, as in this case, a party has taken action in a foreign litigation in an effort to interfere with the jurisdiction of a United States district court. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 126 (2d Cir. 2007); *Paramedics*, 369 F.3d at 654; *China Trade*, 837 F.2d at 36.

Under Second Circuit precedent, an anti-suit injunction may be granted where two threshold requirements are met: "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Paramedics*, 369 F.3d at 652 (citing *China Trade*, 837 F.2d at 35). If those requirements are satisfied, the court must weigh five additional factors set forth in *China Trade*, including: (1) the threat to enjoining court's jurisdiction posed by the foreign action; (2) the potential frustration of strong public policies in the enjoining forum; (3) the vexatiousness of the foreign litigation; (4) the possibility of delay, inconvenience, expense, inconsistency or a race to judgment; and (5) other equitable considerations. *See Karaha Bodas*, 500 F.3d at 119; *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157 (GEL), 2006 WL 3735657, at *4 (S.D.N.Y. Dec. 15, 2006).

6

Anti-suit injunctions reflect an important principle that was discussed in *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984), which is a case that *China Trade* cited with approval. *See China Trade*, 837 F.2d at 38-39. In *Laker*, the D.C. Circuit affirmed an anti-suit injunction that enjoined the filing of foreign suits in England seeking to prohibit the district court action from going forward. The *Laker* court distinguished anti-suit injunctions aimed at stopping merely parallel proceedings from those designed to protect the district court's jurisdiction and ability to provide relief that is only available in the domestic court:

> The logical reciprocal of the parallel proceeding rule proves that there must be circumstances in which an antisuit injunction is necessary to conserve the court's ability to reach a judgment. Just as the parallel proceeding rule counsels against interference with a foreign court's exercise of concurrent jurisdiction, it authorizes the domestic court to resist the attempts of a foreign court to interfere with an *in personam* action before the domestic court. When the availability of an action in the domestic courts is necessary to a full and fair adjudication of the plaintiff's claims, a court should preserve that forum. Thus, where the foreign proceeding is not following a parallel track but attempts to carve out exclusive jurisdiction over concurrent actions, an injunction may be necessary to avoid the possibility of losing validly invoked jurisdiction. This would be particularly true if the foreign forum did not offer the remedy sought in the domestic forum.

731 F.2d at 929-30 (footnotes omitted; emphasis added). *See also id.* at 927 ("Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants. Thus, when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings.").

In this case, as in *Laker*, the BVI Motion seeks to interfere directly with the Court's jurisdiction. Also, as in *Laker*, the effect of such an order would be to prevent Sonera from

\\NY - 002507/000004 - 2590045 v3

pursuing remedies that are available under New York law, such as turnover of the Redemption Right, which is not available under English law. Under the circumstances, the Court should enter the requested anti-suit injunction against Çukurova.

### A. The Threshold Requirements from *China Trade* Are Easily Satisfied Here

Both of the *China Trade* requirements are met in this case. *First*, the parties in this action and the BVI proceeding are the same. Çukurova's attempt to add ATT and Altimo in the BVI proceeding does not affect the analysis. The involvement of ATT and Altimo in the BVI enforcement proceeding is limited to their ability to pursue Sonera's claims and the BVI Motion does not seek to restrain any other claims by ATT and Altimo. Thus, the key is that Çukurova and Sonera are involved in both of the matters at issue.

*Second*, the resolution of this case would be dispositive of the BVI Motion. The BVI Motion has the goal of preventing the enforcement of the Judgment in this action. If the Motion is granted, Sonera will be able to proceed here and the BVI Motion will become a nullity.

### B. The Additional *China Trade* Factors Weigh Heavily in Favor of an Injunction

In *Karaha Bodas*, the Second Circuit noted that where "an anti-foreign-suit injunction is sought to protect a federal judgment, the additional *China Trade* factors will often favor issuance of an anti-suit injunction when the threshold *China Trade* requirements are met." *Karaha Bodas*, 500 F.3d at 125. The same is true here.

#### 1. The BVI Motion's Threat to Jurisdiction and Public Policy of Forum

The Second Circuit has stated that the first two of the additional *China Trade* factors — the threat to the district court's jurisdiction and the public policy of the forum — have "greater significance" than the other three factors. *Id.* at 126. As in *Karaha Bodas* and *Paramedics*, "both considerations are salient in this case." *Id.* (quoting *Paramedics*, 369 F.2d at 654).

The courts have often issued anti-suit injunctions to protect their jurisdiction, particularly in the context of an action to confirm and enforce an arbitral award. *See, e.g.*, *Karaha Bodas*, 500 F.3d at 126 (stating that "[a]n injunction is necessary because the [foreign] action threatens to undermine the federal judgments confirming and enforcing the [arbitration award]); *Suchodolski Assoc., Inc. v. Cardell Fin. Corp.*, 2006 WL 10886, at *3 (S.D.N.Y. Jan. 3, 2006) ("An anti-suit injunction is needed to protect this Court's jurisdiction over the Award."), *aff'd*, 261 F. App'x 324, 2008 WL 214022 (2d Cir. Jan. 25, 2008). *Cf. Storm*, 2006 WL 3735657, at *4 (finding that foreign litigation threatened court's jurisdiction to oversee arbitral process). Here, the purpose of the BVI Motion is to rob the Court of jurisdiction at a critical moment when Sonera seeks turnover of valuable assets to satisfy the Judgment. In the absence of an anti-suit injunction, Çukurova will once again dissipate assets to avoid its obligations under the Award and the related Judgment. Thus, the granting of the BVI Motion would directly threaten the Court's jurisdiction and nullify its power to enforce the Judgment through the requested turnover order. *See Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) ("[T]he justification for an anti-suit injunction crests when a party seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court.") (quoting *Paramedics*, 369 F.3d at 652); *Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389 (CM) (FM), 2008 WL 563449, at *24 (S.D.N.Y. Feb. 21, 2008) (granting anti-suit injunction and stating that the party to be enjoined "should not be able to seek legal recourse from the [foreign] courts in a transparent attempt to deprive this Court of jurisdiction"), *aff'd*, 323 F. App'x 11, 2009 WL 792839 (2d Cir. Mar. 27, 2009); *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *3 (S.D.N.Y. Jan. 7, 2003) (granting anti-suit injunction and noting that "the

Turkish injunction suit has purported to stay proceedings in, and to nullify preliminary orders issued by, this Court").

The BVI Motion, if granted, would also interfere with a strong public policy. There is an "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), which "applies with particular force in international disputes," *Paramedics*, 369 F.3d at 654. *See also Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.") (internal quotations and citation omitted). Accordingly, the courts have held that anti-suit injunctions are warranted in order to avoid disruption of the arbitral process or interference with the enforcement of arbitral awards. *See Karaha Bodas*, 500 F.3d at 126; *Amaprop*, 2010 WL 1050988, at *6; *Storm*, 2006 WL 6167978, at *23; *Suchodolski*, 2006 WL 10886, at *3. In *Karaha Bodas*, the Second Circuit noted that the twin goals of arbitration — namely, "settling disputes efficiently and avoiding long and expensive litigation" — would be undermined if the losing party were permitted to engage in foreign action "that is intended to vitiate an international arbitral award that federal courts have confirmed and enforced." 500 F.3d at 126. Since the BVI Motion seeks to disrupt the enforcement of an arbitral award, the public policy factor weighs heavily in favor of an anti-suit injunction.

### 2. Çukurova's Vexatious Conduct

The BVI Motion is symptomatic of Çukurova's vexatious conduct in this case. Even though Çukurova has participated in these proceedings and sought affirmative relief from the Court, it has utterly disregarded rulings that are not to its liking. Çukurova's recent response to Sonera's request for a preliminary injunction is telling. Although Çukurova complained that the Court did not allow for sufficient consideration of the facts relating to the permanent injunction,

10

it refuses to participate in any evidentiary hearing and will not produce any discovery in connection with a hearing on the entry of a permanent injunction. In a similar vein, Çukurova has announced that it will take an appeal from the Court's order on the preliminary injunction, but it seeks to cut off any appellate consideration in the United States through the BVI Motion. Thus, the BVI Motion is not a legitimate exercise of Çukurova's rights; it is nothing more than an effort to harass Sonera, frustrate the U.S. judicial process and obstruct enforcement of the Judgment. *See id.* ("Proceedings are apt to be especially vexatious . . . where a foreign proceeding threatens to undermine a federal judgment.").

### 3. The BVI Motion Will Cause Delay, Needless Expense and a Race to Judgment

The BVI Motion raises the likelihood of delay, needless expense and an unseemly rush to judgment. Çukurova is attempting to obtain an order from BVI court in the hope that it can complete the Redemption Transaction before there is any further adverse activity in the U.S. court system, which would allow it to transfer (or encumber) valuable assets and thereby prevent Sonera from obtaining a turnover order to enforce the Judgment. The narrowly tailored relief sought by Sonera in the Motion would put an end to such gamesmanship.

### 4. The Equitable Considerations Favor the Entry of an Anti-Suit Injunction

In assessing the equitable considerations, the courts may examine issues of comity. However, a foreign proceeding is not entitled to deference when it is an attempt to defeat the jurisdiction of the U.S. court. *See id.* at 127 (stating that comity concerns "have no bearing" with respect to foreign actions "intended to undermine federal judgments"); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) ("[O]rders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders.") (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 208–209

11

(1958)); *Paramedics*, 369 F.3d at 355 ("[W]here one court has already reached a judgment — on the same issues, involving the same parties — considerations of comity have diminished force."); *Int'l Equity Invs.*, 441 F. Supp. 2d at 561-62 (attempt to defeat jurisdiction was not entitled to comity). Thus, comity concerns do not affect the issuance of the narrow anti-suit injunction sought here.

Also, to the extent comity comes into play in this case, it favors the granting of the Motion. Through the BVI Motion, Çukurova is asking the BVI court to disregard the Court's entry of preliminary injunction and render it a nullity. In order to protect its jurisdiction and the integrity of its prior orders, the Court should enjoin Çukurova from pursuing the BVI Motion. *See Karaha Bodas*, 500 F.3d at 125 (noting that comity concerns require the protection, through an anti-suit injunction, of the regime for enforcement of international arbitral awards).

Other equitable considerations further weigh in favor of an anti-suit injunction. After years of arbitration proceedings and chasing Çukurova for payment, Sonera at long last has an opportunity to reach valuable assets and otherwise bring about satisfaction of the arbitral award. Sonera has provided the Court with unrebutted evidence demonstrating Çukurova's dissipation of assets in the recent past to avoid paying the award. The granting of the BVI Motion would greatly impede Sonera's enforcement efforts and cause it to lose, perhaps forever, a chance to collect on the debt that Çukurova owes. The Court should not permit such an inequitable result.

### C. The Motion Meets the Other Requirements for the Issuance of a Preliminary Injunction

Even though the primary and secondary *China Trade* factors are satisfied, the Court must also consider the standard preliminary injunction elements to determine whether Sonera has demonstrated "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a

12

fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."
*Software AG, Inc.*, 2009 WL 792839, at *1. The Motion readily satisfies this test.

*First*, Sonera would suffer irreparable harm in the absence of an anti-suit injunction because, as discussed above, the granting of the BVI Motion would deprive it of the equitable remedy of turnover. A court may issue preliminary injunctive relief to preserve its ability to grant final equitable relief. *See Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986) ("'[A] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.'") (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945)); *Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077, at *9 (S.D.N.Y. May 7, 1997) (granting preliminary injunction because the nature of the action was "equitable" and "the assets frozen by this injunction are related to the subject matter of the underlying suit"), *aff'd*, 131 F.3d 131 (2d Cir. 1997); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1525 (S.D. Cal. 1989) (same), *aff'd*, 970 F.2d 552 (9th Cir. 1992). Furthermore, as the Court stated in the PI Order, the injury to Sonera would not be compensable through money damages because Çukurova has repeatedly refused to pay anything to Sonera. (Dkt. #97, ¶ D.)

*Second*, Sonera has a very high likelihood of success. CPLR § 5225(a) requires the turnover of property and rights, and the Court has already found for purposes of a preliminary injunction that Çukurova has an interest in certain property and rights, including the Redemption Right. (*See id.*, ¶¶ 7-17.) At a minimum, Sonera has shown that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips decidedly in its favor. The PI Order and the request for turnover, if granted, provide Sonera with an opportunity to finally collect on the over $1 billion debt that Çukurova

13

owes.  On the other hand, it would impose a huge hardship on Sonera if the Court were to allow

Çukurova to evade its long-standing debt through the relief sought in the BVI Motion.[1]

## II.    An Anti-Suit Injunction Is Also Warranted Under the All Writs Act

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in

aid of their respective jurisdiction and agreeable to the usages and principles of law."  28 U.S.C.

§ 1651(a).  This includes "the power to 'issue such commands  . . . as may be necessary or

appropriate to effectuate and prevent the frustration of orders it has previously issued in its

exercise of jurisdiction otherwise obtained.'"  *United States v. Int'l Bhd. of Teamsters*, 266 F.3d

45, 49-50 (2d Cir. 2001) (quoting *Sheet Metal Contractors Ass'n v. Sheet Metals Workers' Int'l

Ass'n*, 157 F.3d 78, 82 (2d Cir. 1998)).  An All Writs Act injunction extends to actions taking

place in a foreign court.  *See United States v. Int'l Bhd. of Teamsters*, 72 F. Supp. 2d 257, 260-62

(S.D.N.Y. 1999) (enjoining Canadian action pursuant to the All Writs Act).

Çukurova is clearly seeking to frustrate the Court's orders through the BVI Motion and

achieve in the BVI the result it could not get here.  Therefore, the Court also has the power under

the All Writs Act to issue an anti-suit injunction.

## III.    The Relief Sought by Sonera Is Limited to the BVI Motion

Unlike Çukurova, Sonera is requesting a narrow anti-suit injunction tailored to address

only the BVI Motion.  In *Amaprop*, the court noted that district courts must exercise a "delicate

touch in the issuance of anti-foreign suit injunctions."  2010 WL 1050988, at *9 (quotation and

citation omitted).  Here, as in *Amaprop*, Sonera seeks an anti-suit injunction that operates against

Çukurova, its officers, agents, servants, employees and attorneys, and all other persons who are

---

[1]    Sonera respectfully requests, for the same reasons set forth in its initial motion for a preliminary
injunction, that the Court waive the requirement for the posting of security in connection with the
Motion.

in active concert or participation with Çukurova. *Id.* *See also* Fed. R. Civ. P. 65(d)(2). Moreover, the injunction proposed by Sonera would focus on the BVI Motion and would not reach any other aspects of the BVI proceeding. This is far narrower than the anti-suit injunctions in other cases, which barred actions on a worldwide or countrywide basis. *See Amaprop*, 2010 WL 1050988, at *9 (enjoining any action in India); *Storm*, 2006 WL 3735657, at *14 (enjoining any action in Ukraine); *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 582-83 (S.D.N.Y. 2003) (enjoining actions worldwide). In sum, Sonera's proposed injunction will achieve the goal of preserving the Court's jurisdiction without offending any comity principles.

## Conclusion

For the reasons set forth above, Sonera respectfully requests that the Court grant the Motion by issuing an order in the form attached hereto as Exhibit A.

Dated: New York, New York
April 30, 2013

Hogan Lovells US LLP

By: _____

Pieter Van Tol
Andrew Behrman
Erin Meyer

875 Third Avenue
New York, NY 10022
(212) 918-3000
pieter.vantol@hoganlovells.com

*Attorneys for Petitioner Sonera*
*Holding B.V.*

\\NY - 002507/000004 - 2590045 v3

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONERA HOLDING B.V.,

                              Petitioner,

        - v -

ÇUKUROVA HOLDING A.Ş.,

                              Respondent.

11 Civ. 8909 (DLC)

ORDER

DENISE L. COTE, District Judge:

Upon consideration of the motion by petitioner Sonera Holding B.V. ("Sonera") for an anti-suit injunction (the "Motion"), all the submissions made in connection with the Motion and the pleadings and proceedings in this matter, it is hereby

ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that respondent Çukurova Holding A.Ş. ("Çukurova"), together with its officers, agents, servants, employees and attorneys, and all persons who are in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, shall, as soon as possible, dismiss or cause to be dismissed the application for an anti-suit injunction made by Çukurova on April 26, 2013 (the "BVI Motion") before the Eastern Caribbean Supreme Court, in the High Court of Justice, British Virgin Islands (Commercial Division), Claim No.: BVIHC (COM) 2011/119 (the "BVI Court"). In the event that the BVI Court grants the BVI Motion prior to the issuance of this Order, Çukurova, together with its officers, agents, servants, employees and attorneys, and all persons who are in active concert or participation with them who receive actual notice of this Order, by personal service or

otherwise, shall, as soon as possible, take all necessary steps to effect the withdrawal of such an order from the BVI Court.

IT IS FURTHER ORDERED that no security for this Order will be required.

IT IS FURTHER ORDERED that Çukurova shall file with the Court an affidavit stating that it has fully complied with this Order and detailing the methods of compliance.  Violation of this Order will subject the violators to contempt sanctions.


SO ORDERED.

Dated:      New York, New York
            May ___ , 2013


                                    _____
                                    DENISE L. COTE
                                    United States District Judge