```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
SONERA HOLDING B.V.,                     :
                                         :
                    Petitioner,          :     11 Civ. 8909 (DLC)
                                         :
          -v-                            :
                                         :     OPINION & ORDER
ÇUKUROVA HOLDING A.Ş.,                   :
                                         :
                    Respondent.          :
---------------------------------------- X
```

APPEARANCES:

For the petitioner:
Pieter Van Tol
Andrew Behrman
Erin Meyer
Pooja Boisture
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

For the respondent:
Richard J. Holwell
Michael S. Shuster
Dorit Ungar Black
Demian A. Ordway
Holwell Shuster & Goldberg LLP
125 Broad Street, 39th Floor
New York, NY 10004

DENISE COTE, District Judge:

　　　　Before the Court is Çukurova's April 26, 2013, motion for dissolution of a preliminary injunction, or stay of the preliminary injunction pending appeal, which became fully submitted on May 6.  For the reasons stated below, Çukurova's request that the preliminary injunction be dissolved is denied,

1

while its request that the injunction be stayed pending appeal is granted, provided Çukurova posts a bond in the full amount of the judgment.

BACKGROUND

The factual background of this case is laid out in the Court's September 10, 2012 Opinion, Sonera Holding B.V. v. Çukurova Holding A.S., 895 F. Supp. 2d 513 (S.D.N.Y 2012), and will not be repeated beyond what is necessary to provide context for the current motions. In 2005, pursuant to a letter agreement, the parties began arbitration in Switzerland. On September 1, 2011, the Swiss arbitration tribunal entered a Final Award, ordering Çukurova to pay $932 million in damages due to its failure to deliver to Sonera certain shares in Turkcell, the largest mobile telephone service in Turkey. Sonera then began its efforts to have the Final Award enforced, which continue to this day.

On December 6, 2011, Sonera filed this action, seeking confirmation of the Final Award in the Southern District of New York. On September 10, 2012, after full briefing on Sonera's petition for confirmation of the arbitral award, the Court issued an Opinion and Order holding that personal jurisdiction existed over Çukurova and confirming the arbitral award. Id. A final judgment was entered on September 21, and Çukurova appealed,

arguing that the Court lacked personal jurisdiction. Çukurova nevertheless refused to post a bond pending appeal, and so its request for a stay of post-judgment proceedings was denied.

Post-judgment discovery began, the goal of which was enforcement of the final judgment. Çukurova steadfastly refused to participate in discovery, insisting that the Court lacked personal jurisdiction and that its Opinion and Order would be reversed on appeal, while refusing to post a bond such that enforcement proceedings could be stayed pending appeal. On March 11, 2013, after repeated failures to comply with court-ordered discovery, the Court held Çukurova in contempt, and imposed rapidly escalating fines. Çukurova has to date taken no steps to cure its ongoing contempt, indicating that while it is willing to engage in discovery to revisit the question of personal jurisdiction, it will not participate in discovery regarding enforcement of the final judgment.

On April 9, Sonera brought an order to show cause, seeking an ex parte temporary restraining order, a preliminary injunction, a turnover order, and increased contempt fines. The Part I Judge entered the Temporary Restraining Order, and briefing began on Sonera's other requests. One of the principal goals of Sonera's proposal was to enjoin the "redemption transaction," which is the result of years of litigation in the British Virgin Islands ("BVI") and the Privy Council between

3

Çukurova and Alfa Telecom Turkey Limited ("Alfa") over the same shares in Turkcell that were at issue in the Swiss arbitral award underlying this litigation.  The Privy Council decided in late January 2013 that Çukurova would be given a chance to redeem the Turkcell shares from Alfa within a certain window of time and for a sum of money to be determined in a subsequent decision expected imminently.  Recognizing that the redemption transaction was a crucial and fleeting opportunity for Çukurova, Sonera sought to have it enjoined in the hopes that doing so would induce Çukurova to pay its debt to Sonera.

On April 16, after full briefing, the Court held a conference to address Sonera's requests.  At the conference, the Court heard argument about the terms of the proposed preliminary injunction after Çukurova indicated that it could not agree to participate in discovery on any of the factual issues relevant to the entry of the injunction and had no evidence to offer at a preliminary injunction hearing.  The preliminary injunction was entered on April 18.  The Court has set an expedited schedule for a hearing on entry of a final injunction, although Çukurova has reiterated that it will not participate in discovery relevant to that proceeding.

On April 26, after securing new counsel, Çukurova filed the instant motion, which seeks either dissolution of the preliminary injunction or a stay of the preliminary injunction pending

4

appeal.  A conference was held on April 29, and in Orders of the same day the Court set schedules for (1) full briefing on Çukurova's motion for dissolution, (2) briefing on Sonera's motion for an anti-suit injunction, and (3) the entry of a final injunction, to be determined after either further briefing or a trial, depending on whether Çukurova elects to participate in discovery such that a factual record may be developed.  The first two motions were fully briefed on May 6.

## DISCUSSION

I.   Dissolution of the Preliminary Injunction

In seeking dissolution of the preliminary injunction, Çukurova once again returns to the argument that this Court lacks personal jurisdiction, arguing that the current posture of the case -- post-judgment enforcement -- is a new proceeding and that the Court is therefore required to reexamine whether personal jurisdiction exists over Çukurova, and to consider new evidence in doing so.  There is, to the contrary, no support in the case law for the proposition that the entry of a final judgment requires a court to revisit the issue of personal jurisdiction in what is, after all, the same action involving the same parties.  The cases cited by Çukurova are not on-point, as they involve the question of whether an interest rate set by contract continues to apply after the entry of a final judgment.  <u>See FCS Advisors,</u>

Inc. v. Fair Fin. Co., 605 F.3d 144, 148 (2d Cir. 2010); Kotsopoulos v. Asturia Shipping Co., 467 F.2d 91, 95 (2d Cir. 1972). The issue of personal jurisdiction is before the Court of Appeals and therefore is not properly considered by this Court. See New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989).

The Second Circuit explained in Sierra Club v. U.S. Army Corps of Engineers, 732 F.3d 253 (2d Cir. 1984), that district courts have the discretion to dissolve preliminary injunctions and that "[t]he test of that discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction." Id. at 257. Çukurova makes no argument as to how dissolving the preliminary injunction would help effectuate its purpose, and indeed, doing so would completely thwart it. Dissolving the preliminary injunction and allowing Çukurova to execute the redemption transaction would presumably allow Çukurova to continue ignoring its discovery obligations, contempt fines, and the judgment it owes to Sonera.

Çukurova argues that the preliminary injunction should be dissolved because Sonera has not demonstrated that it would suffer irreparable harm absent an injunction. Of course, the redemption transaction itself would not injure Sonera; Sonera's position is rather that enjoining the redemption transaction gives it leverage over Çukurova that would allow it to secure

satisfaction of its judgment, the legitimacy of which is not in dispute.  Çukurova insists that Sonera has not demonstrated that it will be unable to collect its judgment if the redemption transaction goes forward, but this is largely thanks to Çukurova's refusal to participate in discovery regarding its financial position.  It is thus totally unclear whether and when Sonera will have another opportunity to ensure that Çukurova pays its $932 million debt and accumulating contempt fines.

Çukurova also argues that because the redemption transaction will improve its financial position, it will be more able to pay its debt if the transaction is not enjoined.  This argument ignores the unrebutted evidence that Çukurova is actively attempting to borrow funds to carry out the redemption transaction by granting as security a first-ranking pledge over the Turkcell shares it plans to redeem, thereby burdening them and rendering them unavailable to satisfy the judgment.  Çukurova also points out that Sonera has sold Alfa an interest in this lawsuit, suggesting that the true purpose behind the preliminary injunction is not the satisfaction of Sonera's judgment but rather stopping the redemption transaction at the behest of Alfa. Regardless of where the proceeds may ultimately flow, there is no dispute that Sonera is entitled to the enforcement of its $932 million arbitral award, and Çukurova has always had the ability, both earlier and now, as discussed below, to effect a stay of

this proceeding by posting a bond in the amount of the judgment. The Court thus declines to dissolve the preliminary injunction.

II.   Stay of the Preliminary Injunction Pending Appeal

In the alternative, Çukurova requests a stay of the preliminary injunction pending its appeal, which it says it will file shortly.  For the reasons discussed below, Çukurova may obtain a stay of the preliminary injunction by posting a bond in the full amount of the judgment.

The Supreme Court has outlined four factors to be considered by courts in determining whether to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

Çukurova does not argue that it has made a strong showing that it is likely to succeed on the merits.  Instead, pointing out that the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay," Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (citation omitted), Çukurova suggests that the irreparable injury it will suffer absent a stay is so

great as to render a showing under the first prong unnecessary. As Çukurova observes, however, mere financial injury does not qualify as irreparable harm; "monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989). In order to suffice as irreparable injury, monetary harm must "threaten[] the very existence of the movant's business." Malarkey v. Texaco, Inc., 794 F. Supp. 1248, 1250 (S.D.N.Y. 1992) (citation omitted). Çukurova argues that losing the opportunity to complete the redemption transaction meets this standard, but it has introduced no evidence that failing to redeem the Turkcell shares would threaten the very existence of its business, and indeed has refused to participate in any discovery that would shed light on its financial position.

Under the third factor, issuing a stay of the preliminary injunction would cause harm to Sonera if the redemption transaction is executed during the pendency of Çukurova's appeal. If the transaction goes forward, Sonera would lose what has so far been its only opportunity to enforce the final judgment owed by Çukurova. Çukurova's refusal to participate in post-judgment discovery has made it impossible to evaluate the likelihood that Sonera would have another opportunity in the future to ensure that the arbitral award is enforced.

Finally, the public interest prong weighs heavily against granting a stay.  The United States has a strong interest in satisfying its treaty obligations by permitting confirmation and enforcement of foreign arbitral awards "in the vast majority of cases."  Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru, 665 F.3d 384, 394 (2d Cir. 2011) (Lynch, J., dissenting).  New York in particular has a keen interest in convincing the international business community of the benefits of selecting New York law and a New York forum in order to ensure fairness and predictability in their commercial relationships.  Granting a stay here would only frustrate, possibly irreparably, Sonera's efforts to enforce the arbitral award.

Although the four factors weigh against granting Çukurova a stay pending appeal, much of this analysis is premised on Çukurova's obfuscatory approach to these enforcement proceedings, and the felt need to ensure that Sonera does not lose an opportunity to see the judgment satisfied.  The analysis would of course be radically different if Çukurova provided any indication that it was willing to pay the judgment against it.  Accordingly, the Court will grant Çukurova a stay of the preliminary injunction if it posts a bond in the amount of the judgment.  Çukurova could have effected a stay of these proceedings months ago by posting a bond, and doing so now would obviate the need to protect Sonera's interests by enjoining the redemption

transaction.

Çukurova argues that it should not be required to post a bond to obtain a stay of the preliminary injunction because the Court did not require Sonera to post a bond before granting the preliminary injunction.  Under Second Circuit precedent, courts have discretion to waive Rule 65(c)'s requirement of a bond "where there has been no proof of likelihood of harm."  Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997) (citation omitted).  Once again, Çukurova's refusal to participate in discovery regarding its assets or financial position has prevented it from introducing any proof of the harm it may suffer under the preliminary injunction, and Çukurova did not explain its need for a bond at the April 16 hearing on the preliminary injunction.  It also bears repeating that Çukurova is in possession of $932 million that is owed to Sonera, a debt that itself acts as a kind of security and that will continue to be owed regardless of whether the preliminary injunction is vacated on appeal.


CONCLUSION

For the foregoing reasons, Çukurova's April 26 motion for dissolution of the preliminary injunction is denied, while its motion for a stay of the injunction pending appeal is granted, provided it posts a bond in the full amount of the final

judgment.

Dated: New York, New York
May 10, 2013

```
                              _____
                                      DENISE COTE
                              United States District Judge
```